UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS- EASTERN DIVISION

| | | |
|---|---|---|
| Jorge Alejandro Rojas, | ) | |
| | ) | |
| Plaintiff, | ) | 23-cv-5049 |
| | ) | |
| -v- | ) | Honorable Judge Nancy Maldonado |
| | ) | |
| First Party for Bolingbrook, Michael J. Carpanzano, and Mary Alexander-Basta, | ) ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

NOW COMES Defendants, First Party of Bolingbrook, Michael J. Carpanzano and Mary Alexander-Basta, by and through their attorneys, Odelson, Murphey, Frazier & McGrath, LTD. and pursuant to Fed. R. Civ. P. 12(b)(6) state as follows for their Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Complaint:

### INTRODUCTION

Plaintiff alleges Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "Act"). His one count Complaint asserts Defendants used an "automatic telephone dialing system" and/or a pre-recorded voice in text messages to him between February 27, 2023 and April 3, 2023 in violation of 47 U.S.C. § 227(b)(1)(A). Plaintiff fails to provide any factual support for the allegations that these text messages used an "automatic telephone dialing system" or a "prerecorded voice". Plaintiff has failed to state a cause of action and his Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

1

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss challenges a pleading for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do. *Bell Atl. Corp.*, 550 U.S. at 555.

**FACTS**

The pertinent facts alleged in Plaintiff's Complaint, taken as true for purposes of this motion only, are as follows: Plaintiff's name is Jorge, he is a resident of the Village of Bolingbrook and maintains a cellular telephone. (Doc. 006 ¶¶ 7, 20). Plaintiff received the following text messages from phone number (708) 312-3544:

(1)  February 27, 2023: "*Hello, Jorge, this is Mayor Mary Basta. I wanted to remind you that we have an important election coming up on April 4. I am asking you to support Michael Carpanzano, Jean Kelly, and Jose Quintero. They are crucial to the future of Bolingbrook. https://electme.app/5fLk4UUE Reply STOP to opt out*" (Doc. 006 ¶¶ 27-28).

(2)  March 8, 2023: "*Hey there, Jorge, Mayor Mary Basta here- we're almost out of yard signs and wanted to make sure you had the opportunity to get one before we're out. Click here to requires a sign and don't forget to vote for Carpanzano, Kelly,*

    and Quintero on April 4th https://gotmyvote.us/T0jx3MBEu Reply STOP to opt out"
(Doc. 006 ¶¶ 30-31).

(3) March 15, 2023: "*Hi, Jorge, Mayor Basta again! I just wanted to remind you that early voting starts at the Fountaindale Public Library on Monday. I'm asking you to please support Carpanzano, Kelly, and Quintero for Village Trustee. More info on early voting: https://electme.app/dcXvNOVEu Reply STOP to opt out*" (Doc. 006 ¶¶ 33-34).

(4) March 20, 2023: "*Jorge, this is the First Party for Bolingbrook reminding you that our candidates Carpanzano, Kelly, and Quintero have the experience to continue to deliver results for Bolingbrook. Early voting starts today at the Fountaindale Public Library! More info: https://electme.app/cH6xvnjEu Reply STOP to opt out.*" (Doc. 006 ¶¶ 36-37).

(5) April 2, 2023: "*Election day is Tuesday- your confirmed polling place is Woodridge Park District ARC, 8201 Janes Ave – open 6a-7p on 4/4. We need your vote for Carpanzano, Kelly, & Quintero! – Mayor Mary Reply STOP to opt out.*" (Doc. 006 ¶¶ 39-40)

(6) April 3, 2023: "*Tomorrow is Election Day! If you haven't already voted your precinct polls will be open 6a-7p. VOTE 1-2-3 Carpanzano, Kelly, Quintero – Mayor Mary Reply STOP to opt out.*" (Doc. 006 ¶¶ 42-43)

These calls were not made for emergency purposes and were made without any prior express written consent of Plaintiff. (Doc. 006 ¶¶ 68-69).

**ARGUMENT**

The Act prohibits any person within the United States from making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … (iii) to any telephone number assigned to a … cellular telephone service, unless such call is made solely to collect a debt owed to or guaranteed by the United States. 47 U.S.C. § 227(b)(1)(A). While Plaintiff alleges several unexempt "calls" were made to his cellular telephone, he fails to include any factual support for the required elements that Defendants used an "automatic telephone dialing system or an artificial or prerecorded voice". As a result, Plaintiff's complaint is defective as a matter of law.

(1) *Plaintiff fails to allege facts to support the allegation that Defendants used an Automatic Telephone Dialing System.*

The Act defines an Automatic Telephone Dialing System ("ATDS") as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers" 47 USC § 227(a)(1). The Supreme Court resolved a split amongst the Circuits in the interpretation of this definition in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021). In *Facebook, Inc.*, the Supreme Court adopted the Seventh Circuit's approach in *Gadelhak v. AT&T Services, Inc.* that an ATDS must be capable of storing or producing numbers to be called using a random or sequential number generator. *Id*. at 1170. "To qualify as an automatic telephone dialing system, a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id*. at 1173. In other words, a device is not an ATDS if it lacks the capacity to either store or produce telephone numbers using a number generator and merely dials numbers from a database. *Gadelhak*, 950 F.3d 458, 464 (7th Cir. 2020); *Watts v. Emergency Twenty Four, Inc*., No. 20 C 1820, 2021 WL 2529613, at *2 (N.D. Ill. June 21, 2021).

4

(The Act's definition of an ATDS excludes equipment that simply dials numbers from a stored list or database).

The standards for pleading and proving the use of an ATDS under 227(b)(1)(iii) have been raised in light of *Gadelhak* (and *Facebook, Inc.*). *Perez v. Quicken Loans, Inc.*, 19-CV-2072, 2020 WL 1491145, at *2 (N.D. Ill. Mar. 27, 2020). "[M]ost Courts in this district have held that merely reciting the statutory definition of an ATDS is not enough to survive a Rule 12(b)(6) motion." *Garner v. Allstate Ins. Co.*, 20 C 4693, 2021 WL 3857786, at *3 (N.D. Ill. Aug. 30, 2021) (collecting cases). A plaintiff must make allegations about the circumstances of the call that plausibly suggest the use of an ATDS. *Id*.

The Northern District case of *Watts v Emergency Twenty Four* is instructive as to pleading the use of an ATDS post-*Facebook, Inc.* In *Watts*, the plaintiff alleged that defendant utilized technology that is capable of contacting thousands of people a day, stores numbers of persons who have not given their consent, is used to call Plaintiff and others continually and at all hours of the day and night and is used to call numbers stored in its system. *Watts v. Emergency Twenty Four, Inc.*, 20-CV-1820, 2021 WL 2529613, at *3 (N.D. Ill. June 21, 2021). Judge Aspen found that these facts do not support an inference that the defendant utilized an ATDS but, "suggest that instead of randomly or sequentially generating [plaintiff's] number, [defendant's] equipment stored [plaintiff's] number in a database and dialed that stored number because he was an employee at a business that used [defendant's] alarm notification system." *Id*. This Court granted defendant's 12(b)(6) motion to dismiss, concluding that the nature of the calls suggest that they were likely targeted at specific individuals and not randomly generated numbers. *Id*.

Here, Plaintiff fails to even provide the statutory definition of an ATDS or assert that Defendants utilized a "random or sequential number generator." Rather, the facts contained in his

5

Complaint suggest that the texts received by Plaintiff were not at all random. Defendants used the same seven-digit number from local area code 708 for all of the pertinent text messages to Plaintiff. The language of the messages further belies Plaintiff's conclusory allegations that they were generic and pre-written. The text messages were clearly personalized to eligible voters in the Village of Bolingbrook. Four of the six text messages address Plaintiff by his first name and one message goes so far as to specify his specific polling place. Plaintiff's statements that the texts included an opt-out message, would be unreasonable for a human to manually send and were sent "en masse" do nothing to plausibly assert that Defendants utilized a random or sequential number generator to store or produce his telephone number. (See: Doc. 006 ¶¶ 48, 49-51). Instead, Plaintiff's allegations suggest that his phone number was stored in a database of registered voters and he was contacted by Defendants from this database, not a random number generator. Therefore, Rule 12(b)(6) dismissal is warranted because Plaintiff has failed to adequately plead that Defendants used an ATDS.

(2) *Plaintiff fails to allege facts to support the allegation that he received a call using a "prerecorded voice".*

In addition to Plaintiff's failure to allege facts that support an allegation that Defendants used an ATDS, Plaintiff's Complaint fails to satisfy the other, alternative prong required to bring an action under the Act. Plaintiff makes vague references to the use of a pre-recorded voice, which is an alternative theory of liability to the use of an ATDS. However, Plaintiff's Complaint relates only to text messages received from Defendants. There are no factual allegations that he received any voice calls or that the texts were otherwise audible. Text messages sent without any audible component do not utilize a "prerecorded voice" in violation of the TCPA. *See Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1162 (9th Cir. 2023) (affirming partial dismissal of Plaintiff's TCPA complaint finding text messages did not use prerecorded voices because they did not include any

audible components). Accordingly, Plaintiff has also failed to allege a plausible violation of the TCPA under the "prerecorded voice" theory.

## CONCLUSION

Plaintiff's Complaint relies heavily on conclusions but is glaringly devoid of key, factual allegations that sufficiently state a cause of action under the Act. Plaintiff's allegations simultaneously support the opposite of his claim: that his phone number was stored in a database of registered voters, that his number was specifically used by the same sender who sent him personalized messages, and that he received text messages only that did not have any "prerecorded voice." Hence, Plaintiff fails to provide any factual support for the allegations that these text messages used an "automatic telephone dialing system" or a "prerecorded voice" and, as a result, fails to state a valid cause of action. Therefore, Defendants respectfully request that this Court enter an order dismissing the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully Submitted,

**FIRST PARTY OF BOLINGBROOK
MICHAEL J. CARPANZANO
MARY ALEXANDER-BASTA**


By: 	*/s/ Lauren M. DaValle*
	One of their attorneys

Burton S. Odelson
Lauren M. DaValle
Ross D. Secler
Odelson, Murphey, Frazier & McGrath, LTD.
3318 W. 95th St.
Evergreen Park, IL 60805
(708) 424-5678
LDavalle@omfmlaw.com

7