IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JORGE ALEJANDRO ROJAS,<br><br>*Plaintiff,*<br><br>vs.<br><br>FIRST PARTY FOR BOLINGBROOK, MICHAEL J CARPANZANO, and MARY ALEXANDER-BASTA<br><br>*Defendants*. | Case No. 1:23-cv-05049<br><br>Honorable Nancy L. Maldonado<br>Magistrate Judge M. David Weisman<br><br>**JURY TRIAL DEMANDED** |

## AMENDED COMPLAINT

Plaintiff, Jorge Alejandro Rojas, files this Amended Complaint[1] under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, against Defendants First Party for Bolingbrook ("FPFB"), Michael J Carpanzano ("Carpanzano"), and Mary Alexander-Basta (collectively "Defendants"), and alleges based on personal knowledge and information and belief:

### INTRODUCTION

1. As the Supreme Court has explained, Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019. The States likewise field a constant barrage of complaints. For nearly 30 years, representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the "TCPA", generally prohibits robocalls to cell phones and home phones. *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. Plaintiff brings this action against Defendants for violations of the TCPA, 47 U.S.C. § 227.

---

[1] Plaintiff files the Amended Complaint pursuant to the deadlines set forth in the Court's Minute Entry following Defendants filing their Motion to Dismiss. Dkt. 14. Plaintiff's intention with this Amended Complaint is to moot the Defendants motion to dismiss.

1

3. This case involves a campaign by Defendants which placed illegal, campaign-related pre-recorded, artificial, and automated texts to Plaintiff's telephone number, which were not consented to.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over the claims herein under 28 U.S.C. § 1331.

5. This Court has personal jurisdiction over Defendants. The wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Plaintiff resided within this district when the calls were made.

6. Venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

7. Plaintiff Jorge Alejandro Rojas is a natural person residing in Bolingbrook, IL 60440, and is a citizen of the State of Illinois.

8. Defendant First Party for Bolingbrook ("FPFB") is an active Illinois political party committee, and is located at 747 E. Boughton Road #243 Bolingbrook, IL 60440-1508.

9. Defendant Michael J Carpanzano ("Carpanzano") is Chair of Defendant FPFB and is located at 2201 Misty Creek Trail Bolingbrook, IL 60490. Mr. Carpanzano is also a candidate for village trustee.

10. Defendant Mary Alexander-Basta ("Alexander-Basta") is the Mayor of the Village of Bolingbrook, and is located at 375 West Briarcliff Rd Bolingbrook, IL 60440.

11. Defendants are each a person as defined by 47 U.S.C. § 153(39).

12. Defendants acted through their agents, affiliates, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## STATUTORY BACKGROUND

13. The TCPA makes it unlawful to make calls to any cellular or residential line using an artificial or prerecorded voice, or an automatic telephone dialing system, without the call recipient's prior express consent. *See* 47 U.S.C. § 227(b); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012).

14. The TCPA provides a private cause of action to persons who receive such automated, artificial, or -pre-recorded calls. *See* 47 U.S.C. § 227(b)(3).

15. "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)". *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

16. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. It ordered that:

    [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

    I*n the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

17. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 (1995).

18. The FCC explains in its "Rules for Political Campaign Calls and Texts" that "Robotexts – text messages generated through autodialing – are also considered a type of call and fall under all robocall rules.  As text messages generally go to mobile phones, robotexts require the called party's prior express consent. However, political text messages can be sent without the intended recipient's prior consent if the message's sender does not use autodialing technology to send such texts and instead manually dials them." https://www.fcc.gov/rules-political-campaign-calls-and-texts.

19. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that

[b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion. Id. at § 12; see also *Martin v. Leading Edge Recovery Solutions*, LLC, 2012 WL 3292838, at* 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

20. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." *Id*. at §§ 12-13. *See also*, *Mims*, 132 S. Ct. at 744.

21. Further, both *Duguid* and the legislative history of the TCPA are clear that the original focus on prerecorded voice technology prohibition was the fact that such communications involved agentless calls, not on the question of whether a literal voice was used during those agentless calls. *See* Hearing Before the Subcommittee on Communications of the Committee on Commerce, Science and Transportation, United States Senate One Hundred Second Congress First Session July 24, 1992, Testimony of Robert Bulmash and Steve Hamm at pg 11; 7 FCC Rcd. 8752 (F.C.C. September 17, 1992).

22. The Sixth Circuit has also recognized this distinction: "Congress drew an explicit distinction between 'automated telephone calls that deliver an artificial or prerecorded voice message' on the one hand and 'calls place by 'live' persons' on the other." *Ashland Hosp. Corp. v. Serv. Employees Int'l Union*, Dist. 1199 WV/KY/OH, 708 F.3d 737,743 (6th Cir. 2013).

23. Under the TCPA, individual party Defendants are personally liable for the acts and omissions alleged in this Complaint.

24. "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express written consent of the called party." This includes political calls. *See FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules – Biennial Reminder for Pol. Campaigns About Robocalls & Text Abuse*, 31 FCC Rcd. 1940, 1941 n.6 (2016).

## ALLEGATIONS

25. At all times relevant hereto, Plaintiff maintained and used a residential cellular telephone line, with phone number (424) XXX-1582.

26. Plaintiff's phone number is not associated with a business and is used by Plaintiff solely.
27. Plaintiff is the account holder and customary user of his phone number.
28. Plaintiff registered his phone number on the Federal Do Not Call Registry on or around January 18, 2008.
29. Plaintiff registered his phone number on the Do Not Call Registry to obtain solitude from invasive and harassing telemarketing calls. The call prevented Plaintiff from using his phone for legitimate purposes.
30. Plaintiff was within this district when he received the messages. The FPFB advocates for candidates including Defendant Carpanzano, Mr. Michael T Lawler, and Maria Zarate, who are all located within Bolingbrook, and are all seeking elected office within Bolingbrook, which is within this district.
31. Some of the texts included text saying that they were being sent by the Mayor, Alexander-Basta. Plaintiff sues her in this Complaint, and alleges that either she, or someone acting on her direction and/or control, caused the texts to be sent.
32. Upon information and belief, the automated text messaging system used by Defendants to send the text messages has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.
33. Upon information and belief, the automated text messaging system used by Defendants to send the text messages also has the capacity to, and does, dial telephone numbers stored as a list or in a database without human intervention.
34. Moreover, the message sent to Plaintiff was drafted in advance and sent out automatically based on pre-programmed parameters.
35. The texting platform uses an algorithm whereby a random or sequential number generator, similar to a randomization formula or sequential dialing formula, selects which number to dial from the stored list of numbers, and sequences those numbers in order to automatically dial the numbers and send our text messages en masse. Thus, a random or sequential number generator is used both to store the numbers, and to produce the stored numbers from the list, via the campaign, to the dialing platform itself.

36. In Merriam Webster's Dictionary "voice" is defined as "an instrument or medium of expression." It defines "artificial" as "humanly contrived…often on a natural model : MAN-MADE" and "lacking in natural or spontaneous quality."

37. The messages sent to Plaintiff by Defendants using their SMS blasting platform employed a text message as an instrument or medium of expression to deliver an automatic message drafted in advance of being sent, i.e. that of an SMS message, to convey a telemarketing communication to Plaintiff. The platform is a man-made humanly contrived program which allows companies to blast out such messages via non-spontaneous methods, i.e. automated methods similar to that of an assembly line in a factory. Such SMS blasting devices are incapable of spontaneity, as they must be programmed by the operator to automatically send messages out, en masse, pursuant to preprogrammed parameters.

38. Merriam Webster's Dictionary, "prerecorded" is defined as "recorded in advance." "Recorded" is defined as "to set down in writing." The text message sent to Plaintiff's cellular telephone via the SMS blasting platform was set down in writing in advance by Defendant, whose employees wrote out the standard automated messages that were to be sent to Plaintiff and other class members, and by way of preprogrammed SMS blasting, entered the prerecorded message into the SMS Blasting platform, and thereafter sent these messages pursuant to scheduled blasts that were programmed by Defendant. Thus, Defendant employed a text message as an instrument or medium of expression to deliver a prerecorded message drafted in advance of being sent.

39. The SMS platform used by Defendants may have used the following computer code, which is how some popular SMS platforms have been designed:

```
730 if (!this.recordList.isEmpty()) {
731 this.recordNumber++;
732 final String comment = sb == null ? null : sb.toString();
733     result     =     new     CSVRecord(this, this.recordList.toArray(Constants.EMPTY_STRING_ARRAY), comment,
734 this.recordNumber, startCharPosition);
735 }
736 return result;
```

737 }

40. These lines of code, and specifically the "++" in line 731, generate sequential numbers as part of a loop, used to store and produce telephone numbers, which are thereafter mass-blasted text messages to thousands of consumers in mere seconds, without any human intervention whatsoever. This is publicly available open-source code integrated into the proprietary programming interface of a well-known SMS blasting platform.

41. Thus, Defendant's message utilized a "prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

42. Accordingly, Defendants messages utilized an "artificial voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

43. For example, the Mayor did not manually type in the message and Plaintiff's telephone number to send the texts, and therefore artificially generated them.

44. Plaintiff was annoyed and felt harassed by the receipt of the text messages from Defendants.

45. **Calls 1, 2.** On or about February 27, 2023, at 9:09 AM Chicago time, Plaintiff received a text from Defendants, or someone acting upon their direction, from telephone number 708-312-3544.

46. The text identified above stated "Hello, Jorge, this is Mayor Mary Basta. I wanted to remind you that we have an important election coming up on April 4. I am asking you to support Michael Carpanzano, Jean Kelly, and Jose Quintero. They are crucial to the future of Bolingbrook. https://electme.app/ 5fLk4UUE Reply STOP to opt out".

47. A text messaging segment calculator calculates the above text, because of length, to be in fact two text messages. Upon information and belief, these messages were combined to be presented as one by Plaintiff's carrier or phone. *See* https://twiliodeved.github.io/message-segment-calculator/

48. **Calls 3, 4.** On or about March 8, 2023, at 10:17 AM Chicago time, Plaintiff received a text from Defendants, or someone acting upon their direction, from telephone number 708-312-3544.

49. The text identified above stated "Hey there, Jorge, Mayor Mary Basta here - we're almost out of yard signs and wanted to make sure you had the opportunity to get one before we're out.

7

Click here to request a sign and don't forget to vote for Carpanzano, Kelly, and Quintero on April 4th https://gotmyvote.us/T0jx3MBEu Reply STOP to opt out"

50. A text messaging segment calculator calculates the above text, because of length, to be in fact two text messages. Upon information and belief, these messages were combined to be presented as one by Plaintiff's carrier or phone. *See* https://twiliodeved.github.io/message-segment-calculator/

51. **Calls 5, 6.** On or about March 15, 2023, at 12:01 PM Chicago time, Plaintiff received a text from Defendants, or someone acting upon their direction, from telephone number 708-312-3544.

52. The text identified above stated "Hi, Jorge, Mayor Basta again! I just wanted to remind you that early voting starts at the Fountaindale Public Library on Monday. I'm asking you to please support Carpanzano, Kelly, and Quintero for Village Trustee. More info on early voting: https://electme.app/dcXvNOVEu Reply STOP to opt out"

53. A text messaging segment calculator calculates the above text, because of length, to be in fact two text messages. Upon information and belief, these messages were combined to be presented as one by Plaintiff's carrier or phone. *See* https://twiliodeved.github.io/message-segment-calculator/

54. **Calls 7, 8, 9.** On or about March 20, 2023, at 12:08 PM Chicago time, Plaintiff received a text from Defendants, or someone acting upon their direction, from telephone number 708-312-3544.

55. The text identified above stated "Jorge, this is the First Party for Bolingbrook reminding you that our candidates Carpanzano, Kelly, and Quintero have the experience to continue to deliver results for Bolingbrook. Early voting starts today at the Fountaindale Public Library! More info: https://electme.app/cH6xvnjEu  Reply STOP to opt out."

56. A text messaging segment calculator calculates the above text, because of length, to be in fact three text messages. Upon information and belief, these messages were combined to be presented as one by Plaintiff's carrier or phone. *See* https://twiliodeved.github.io/message-segment-calculator/

57. **Calls 10, 11.** On or about April 2, 2023, at 1:10 PM Chicago time, Plaintiff received a text from Defendants, or someone acting upon their direction, from telephone number 708-312-3544.

58. The text identified above stated "Election day is Tuesday - your confirmed polling place is Woodridge Park District ARC, 8201 Janes Ave - open 6a-7p on 4/4. We need your vote for Carpanzano, Kelly, & Quintero! - Mayor Mary Reply STOP to opt out"

59. A text messaging segment calculator calculates the above text, because of length, to be in fact two text messages. Upon information and belief, these messages were combined to be presented as one by Plaintiff's carrier or phone. *See* https://twiliodeved.github.io/message-segment-calculator/

60. **Calls 12, 13.** On or about April 3, 2023, at 6:01 PM Chicago time, Plaintiff received a text from Defendants, or someone acting upon their direction, from telephone number 708-312-3544.

61. The text identified above stated "Tomorrow is Election Day! If you haven't already voted your precinct polls will be open 6a-7p. VOTE 1-2-3 Carpanzano, Kelly, Quintero - Mayor Mary Reply STOP to opt out"

62. A text messaging segment calculator calculates the above text, because of length, to be in fact two text messages. Upon information and belief, these messages were combined to be presented as one by Plaintiff's carrier or phone. *See* https://twiliodeved.github.io/message-segment-calculator/

63. Plaintiff has never donated to the campaign of the candidates being advertised in the text messages.

64. Plaintiff has not provided consent to the campaign to be texted.

65. Defendants worked in concert to communicate messages regarding its political campaigns. To generate support for their campaigns and causes, Defendants relied upon their automated messages.

66. "Reply STOP to opt out" is further indication that the messages sent by Defendants utilized an automatic telephone dialing system. *Poonja v. Kelly Services, Inc.,* 2021 WL 4459526 (N.D. IL, Sept. 29, 2021) ("stop" instruction in generic text sufficient to survive pleadings)

67. The text messages sent were generic in nature, clearly meant to be sent to a large group of individuals at once.

68. It would be unreasonable for a human to manually send the text messages at issue to Plaintiff, along with all of the other targets of the text message, and modify each message to include the appropriate relevant information such as the polling location.

69. Defendants may have selected numbers to be texted sequentially (or possibly randomly) and then used publicly available databases to identify the owner of the telephone number dialed when such randomly or sequentially generated text was sent.

70. Even if Defendants "uploaded" a list of telephone numbers to a database, that database or system can still be using a random or sequential number generator to decide the order in which to send the text messages, given that it can't send them *all* at once.

71. For example, the text messaging system may have identified a dialing order to each telephone number for each campaign when sending out the text messages, using a random or sequential number generator.

72. The texts were conducted using an Automatic Telephone Dialing System (ATDS). As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

73. While not circuit law in this Circuit, the Third Circuit recently clarified that "Congress envisioned a broad understanding of 'equipment'" that constitutes an ATDS. It also clarified that the analysis of whether an ATDS was used in violation of the TCPA centers around "whether the defendant employ[s] [ATDS] capacities to make automated calls," *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 873, 878 (3d Cir. 2022). In so doing, it held that Congress intended to "ban all autodialed calls" because Congress "found autodialer technology to be uniquely harmful." *Id*. at 879 (cleaned up).

74. In enacting the ATDS prohibition, the Third Circuit cited favorably to Congressional understanding "that telemarketers could transform ordinary computers into autodialers through minor and inexpensive modifications," including by "relying on computerized databases containing telephone numbers during their dialing campaigns." *Id*. at 880 (cleaned up). The

Third Circuit held that, in passing the TCPA's ATDS prohibition, Congress intended to remedy the problems caused by callers using computer software to dial numbers randomly or sequentially from a list or database. See *id*.

75. Under *Panzarella*, a system that uses a random or sequential number generator to produce each telephone number to be called from a list of telephone numbers, and then dials those numbers, is by definition an ATDS. This is so even if the telephone numbers in the list themselves were not randomly or sequentially generated. *See id*. at 879-880.

76. The telephone number Defendants used to send the text messages is assigned to Sinch.

77. Sinch's website boasts broadly about its ability to interface with other platforms and send texts en-masse. https://www.sinch.com/products/apis/messaging/sms/.

78. Plaintiff has not interacted with the First Party for Bolingbrook in the past or provided them with his contact information or consent to be contacted.

79. *Facebook* did not use an ATDS because it did not use random or sequential means to select numbers to send text messages to. Rather, it used a specific user action, compromised account security, to send the messages. *Facebook*, 141 S. Ct. at 1168. In other words, an account data breach, not random or sequential selection, was used to send the text message. Similarly, the Ninth Circuit recently held in Brickman v. United States that Facebook did not use an ATDS when it sent birthday text messages because the birthdays, not random or sequential number generators, were used to draw numbers to be called. 56 F.4th 688 (9th Cir. 2022).

80. Plaintiff is ignorant of the exact process by which the Defendants used the system they connected to the Sinch telephone service. However, no facts exist to show that Defendants called the Plaintiff in a targeted manner. Moreover, "The newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage." *Gross v. GG Homes, Inc*., No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); *accord Miles v. Medicredit, Inc*., No. 4:20-cv-01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

81. If a text is a call, then the communication conveyed on that "call" must be treated the same as the communication made on an auditory call.

82. A live individual did not send out each individual text message to Plaintiff.

83. Agentless SMS messages sent by computers are clearly artificial.

11

84. So a text sent in such a manner is an artificial voice.
85. The text messages were sent en masse to many individuals and were pre-written and not personalized in nature except for automated scripting which would insert the relevant information needed to be included such as election location. Plaintiff has never provided his consent to be called or texted to Defendants.
86. The conduct alleged in this action was made willful and knowingly.
87. Defendants' phone call utilized an Automatic Telephone Dialing System (ATDS) without obtaining Plaintiff's prior express written consent.
88. Defendants did not have any consent to call Plaintiff.
89. Defendants are not an organization exempt from the TCPA.
90. Upon information and belief, Plaintiff received additional calls from Defendants and their affiliates not included above.
91. The impersonal and generic nature of Defendants' call shows that Defendants utilized an Automatic Telephone Dialing System (ATDS) and/or a pre-recorded and/or artificial voice in making the call.
92. In total, Defendants and/or their affiliates placed at least thirteen (13) automated text message calls to Plaintiff.
93. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and a sense that his privacy has been invaded by Defendants.
94. Defendants have a pattern and/or practice of failing to comply with the TCPA.
95. The foregoing acts and omissions were in violation of the TCPA.
96. Other Defendants may be named in this case following discovery, including for example any other individuals or entities who directed the unlawful conduct to be made.
97. The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the calling has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).
98. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to treble damages of up to $1,500.00 for each and every call made in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

99. The acts and omissions of Defendants constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.
100. Plaintiff seeks injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.
101. Plaintiff is also entitled to an award of costs.
102. Defendants' call was not made for "emergency purposes."
103. Defendants' call to Plaintiff were made without any prior express written consent.
104. Defendants contacted Plaintiff even though Plaintiff was on the Do Not Call Registry.
105. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.
106. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.
107. As a result of the above violations of the TCPA, Plaintiff has suffered losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.
108. Plaintiff, in discovery will identify additional telephone calls made by Defendants' and or their agents or affiliates, and requests leave to amend the complaint after identifying.
109. Defendants hired, permitted, and enjoyed the benefits of any lead generator and call centers mass robocalling.
110. For the counts identified below, Defendants are directly liable as the party that caused the unlawful calls to be placed.
111. Plaintiff requests a jury trial on all issues so triable.

## COUNT 1.

Violation of the TCPA's Automated Telemarketing Call Provisions, 47 U.S.C. § 227(b)(1)

112. Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.
113. Defendants or one of their affiliates or vendors called Plaintiff's cellular telephone using an "automatic telephone dialing system" and/or a pre-recorded and/or an artificial voice as defined by the TCPA on at least thirteen (13) occasions in violation of 47 U.S.C. § 227(b)(1), without Plaintiff's prior express written consent.

114. Plaintiff was statutorily damaged at least thirteen (13) occasions under 47 U.S.C. § 227(b)(3)(B) by the Defendants by the telephone call described above, in the amount of $500.00 for each.

115. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under 47 U.S.C. § 227(b)(3)(C) for these willful or knowing violations.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and/or severally, in an amount of $19,500.00 plus costs and any other remedy deemed appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of him and against Defendants, jointly and or severally, in an amount to be more fully determined at trial, but at least $19,500.00 as permitted by statute, as follows:

A. All actual damages Plaintiff suffered;

B. Statutory damages of $500.00 per call for each and every violation of 47 U.S.C. § 227(b);

C. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(b)(3)(C);

D. All reasonable attorneys' fees, witness fees, court costs, pre and post-judgment interest, and other litigation costs incurred by Plaintiff;

E. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future;

F. Leave to amend this Complaint to conform to the evidence presented at trial; and

G. Any other relief this Court deems proper.

Respectfully submitted,

Dated: October 26, 2023   /s/ Jorge Alejandro Rojas
JORGE ALEJANDRO ROJAS
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
(424) 219-1582

## CERTIFICATE OF SERVICE

    Counsel of record for Defendants will receive a copy of this filing via the Court's CM/ECF system.

Dated: October 26, 2023             /s/ Jorge Alejandro Rojas
                                              JORGE ALEJANDRO ROJAS
                                              Rojas.jorge96@gmail.com
                                              Plaintiff in Pro Se
                                              557 Cambridge Way
                                              Bolingbrook, IL 60440
                                              (424) 219-1582