IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JORGE ALEJANDRO ROJAS,<br>*Plaintiff,*<br><br>vs.<br><br>FIRST PARTY FOR BOLINGBROOK, MICHAEL J CARPANZANO, and MARY ALEXANDER-BASTA<br><br>*Defendants*. | Case No. 1:23-cv-05049<br><br>Honorable Nancy L. Maldonado<br>Magistrate Judge M. David Weisman |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff, Jorge Alejandro Rojas, responds in opposition to Defendants' November 27, 2023 Motion to Dismiss Plaintiff's First Amended Complaint ("AC", Dkt. 22). For the reasons that follow, Defendants' motion should be denied.

### I. Introduction

This is an action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, challenging Defendants' use of text messaging without Plaintiff's consent. Defendants are the First Party for Bolingbrook - an Illinois political party committee (AC ¶ 8), Michael J. Carpanzano - its chair (AC ¶ 9), and Mary Alexander-Basta - Mayor of the Village of Bolingbrook (AC ¶ 10). Plaintiff alleges having received thirteen (13) text messages[1] (AC ¶¶ 45, 48, 51, 54, 57, 60), directed to his cellular residential telephone number (AC ¶ 25). Plaintiff alleges that the text messages were sent using an Automatic Telephone Dialing System ("ATDS") and/or a pre-recorded or artificial voice – without his consent.

### II. Standard of Review

---

[1] Plaintiff notes that Defendants' Motion to Dismiss sets out the text messages and numbers them one (1) through six (6). As set forth in the Amended Complaint, Plaintiff alleges that due to the length of the text messages (AC ¶ 47), they should be counted as set forth in the Amended Complaint. In any event, Plaintiff does not believe the issue of *how many* text messages were received is relevant when the Court is deciding the instant motion.

1

To state a claim upon which relief can be granted, a complaint must contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In ruling on a pending motion to dismiss, the court must construe the allegations in the complaint in a light most favorable to the plaintiff, accept as true all well-pleaded factual allegations set forth therein, and draw all reasonable inferences in favor of the non-moving party. *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010).

The Supreme Court has repeatedly held that in the context of a motion to dismiss, a district court must construe a pro se complaint liberally. Such a complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (internal quotations omitted). Dismissal of a pro se complaint for failure to state a valid claim is therefore only appropriate when, after applying this liberal construction, it appears "*beyond doubt* that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." *Haines v. Kerner*, 404 U.S. 519, 521 (1972) (internal quotations omitted) (emphasis added). *Spencer v. Earley*, 278 F. App'x 254, 259-60 (4th Cir. 2008)

### III. Argument

#### a. <u>This Court has already held that Plaintiff has met his pleading burden.</u>

After paying the filing fee to commence this case, the Court entered an order on August 9, 2023, stating in part "The Court notes that Plaintiff has paid the filing fee and the complaint has been accepted and filed [6]. Without making any merits determination, Plaintiff appears to plausibly state a claim in his complaint under the Telephone Consumer Protection Act." Dkt. 7.

To be sure, the Complaint has since been amended, but the amendments to the Complaint were mostly in response to the Defendants first Motion to Dismiss – and the basis for Defendants renewed motion to dismiss is similar to the first.

In any event, Plaintiff believes that the Court has already decided that Plaintiff's complaint "plausibly state[s] a claim" – the same standard used by the Court when deciding a 12(b)(6) motion to dismiss.

### b. The Amended Complaint contains sufficient allegations of the use of an ATDS

Defendants motion principally argues that Plaintiff hasn't been able to plead enough facts to support that an ATDS was used. Plaintiff's allegations plead exactly what the text requires: the use of a "random or sequential number generator" to store or produce telephone numbers. That's the test the Supreme Court articulated in *Facebook*, and the Plaintiff meets that test. *Facebook, Inc v. Duguid*, 141 S. Ct. 1163, 1170 (2021). Indeed, *Facebook* itself explicitly clarified that "the equipment in question must use a random or sequential number generator." *Facebook*, 141 S. Ct. at 1170. *Facebook* does not require the use of a "random or sequential telephone number generator." "Production of a telephone number is not, therefore, the sine qua non of an ATDS: storage of telephone numbers using a random or sequential number generator would also suffice." *Dawson v. Porch.com*, No. 2:20-cv-00604- RSL, 2023 WL 3947831, at *2 (W.D. Wash. June 11, 2023).

#### i. The procedural history between this case and *Gadelhak/Facebook* is very different

Gadelhak, 950 F.3d 458, 464 (7th Cir. 2020), was decided at the motion for summary judgment stage. "As other courts have observed (pre-*Gadelhak*), it is unclear how plaintiffs can plead the technical details of the system used by a defendant when the defendant has that information."" *Weekly v. Fifth Third Bank*, No. 20 CV 01786, at *6 (N.D. Ill. Dec. 22, 2020).

Critically, *Klueh* noted that "under *Gadelhak*, a system that 'lacks the *capacity* either to store or to produce telephone numbers using a number generator' and instead "dials numbers only from a customer database" is not an ATDS. *Id*. at *4 (citing *Gadelhak*, 950 F.3d at 464) (emphasis added). But even under *Gadelhak*, a complaint need not "allege that the system *actually deployed* that capacity" in order to qualify as an ATDS and violate the TCPA. *Id*. at *6 (emphasis added). According to *Klueh*, a dialing system can qualify as an ATDS (as defined by *Gadelhak*) without actually utilizing its capacity for random or sequential number generation so long as it has such capacity. Because it would be impossible for any plaintiff to know about a system's capacity prior to discovery, the *Klueh* court considered three important facts from the complaint before denying the defendant's motion to dismiss. *Weekly v. Fifth Third Bank*, No. 20 CV 01786, at *6 (N.D. Ill. Dec. 22, 2020).

3

*Mosley v. Gen. Revenue Corp.,* No. 20 CV 01012, 2020 WL 4060767, at *4 (C.D. Ill. July 20, 2020) ("no plaintiff ought to be held to a standard that requires the plaintiff to plead technical information to which they could not have pre-discovery. ")

Similarly, here, important facts that Plaintiff pleads include the fact that the text messages included a "Reply STOP to opt out" message. AC ¶¶ 46, 49, 52, 55, 58, 61, 66. "Reply STOP to opt out" is further indication that the messages sent by Defendants utilized an automatic telephone dialing system. *Poonja v. Kelly Services, Inc.,* 2021 WL 4459526 (N.D. IL, Sept. 29, 2021) ("stop" instruction in generic text sufficient to survive pleadings). To be clear, Plaintiff has never "opted in" to getting these text messages. It is unclear as to why Defendants even included a "Reply STOP to opt out" message if, in their view, nothing about their conduct could be illegal.

Defendants have disclosed, in discovery via their initial disclosure, that they utilize Prompt.io's services for sending the text messages at issue. Prompt.io's General Terms and Conditions (https://www.prompt.io/legal/terms-of-service), includes several clauses relevant to the resolution of this case. For one, under the "Warranties" section, ¶ 4(c), "You and all Authorized Users will ensure that an internal Do Not Call ("DNC") policy is implemented in accordance with TCPA implementing regulations prior to using the Prompt.io Services. *You and all Authorized Users will ensure that residential numbers on the national DNC are not contacted without required express consent, a business relationship or an inquiry as permitted under Applicable Law.*" (emphasis added).

Plaintiff has been on the national DNC since January 18, 2008. AC ¶ 28. Plaintiff was nevertheless contacted, without required express consent, a business relationship, or an inquiry.

In another paragraph (4(b)), the General Terms and Conditions state "You and all Authorized Users will use the Prompt.io Services in full compliance with the terms, conditions and requirements of the TCPA and, where applicable, the TSR, including the requirements to obtain prior express consent or, in the case of any marketing or promotional messages, prior express written consent, before sending any messages to wireless phones using automated dialing or texting technologies and/or artificial or prerecorded voice messages."

Since this clause is included, specifically with reference to "automated dialing or texting technologies," Plaintiff believes that the system used by Prompt.io, and Defendants, has the capacity of using technology regulated by and prohibited by the TCPA. Other Courts have similarly held that the inclusion of language regarding use of ATDS equipment in a privacy policy

is sufficient to survive a motion to dismiss. *Zononi v. CHW Group*, 2023 WL 2667941, Case No. 22-cv-14358-Cannon/McCabe (S.D. Fl. March 7, 2023).

Judge Kendall, in a case decided in June 2020, held "These allegations, if proven, constitute circumstantial evidence that Defendant utilized an ATDS to send the text messages to Plaintiff. At this stage, without the benefit of discovery, it would be nearly impossible for Plaintiff to make any more specific allegations about the system Defendant used to send her the text messages she received. *See Mauer v. Am. Intercontinental Univ., Inc.*, 16-CV-4651395, 2016 WL 4651395 (N.D. Ill. 2016) (finding that "it would be nearly impossible for plaintiffs to obtain evidence to determine the type of machine used for a call absent discovery"). *The Court will not require Plaintiff to achieve a near impossibility to satisfy the pleading standards*." *Jara v. Redbox Automated Retail, LLC*, No. 19 C 4532 (N.D. Ill. Jan. 28, 2020) (*emphasis added*). In *Jara,* the Defendant similarly included "txtStop2stop" in the text messages. Although the Defendant in that case used a "dedicated SMS number" which was a "shortcode", the Defendants in this case also sent the text messages all from the same telephone number.

This Court should similarly not require Plaintiff to reach a "near impossibility" standard when it comes to pleading an ATDS prior to the benefit of discovery.

### ii. **Despite *Facebook*, the Courts are still working to interpret what an ATDS means.**

In Facebook, the Supreme Court suggested in a footnote that "an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list" and "then store those numbers to be dialed at a later time." 141 S.Ct. at 1172 n.7.

Plaintiff's inclusion of software code in his Amended Complaint was to show that even if the system used did not randomly or sequentially generate the telephone numbers to call, the system may have the capacity to do so, and that a random or sequential number generator could have been used in order to select what order to send the text messages. Plaintiff believes that each text message wasn't sent by a human individually. With a population of ~73,000 in 2020, it would be unreasonable for a computer, service, or let alone a human, send out that many messages all at once. Topics of discovery on Prompt.io would include information related to how the text messages were sent out. Considering that Prompt.io includes in its terms of service provisions referring to automatic systems, Plaintiff believes this further demonstrates that his allegations plausibly allege the use of an ATDS.

Courts throughout have recognized that the post *Facebook* landscape is confusing – and inconsistent. Dozens of judges have penned orders concluding that an ATDS does not have to self-generate the list of telephone numbers it dials. *See, e.g., Montanez v. Future Vision Brain Bank, LLC*, 536 F.Supp.3d 828, 837–838 (D. Colo. 2021) (allegations that equipment uses a sequential number generator to dial numbers in a sequential order are sufficient to survive a motion to dismiss); *Atkinson v. Pro Custom Solar LCC*, No. SA-21-cv-178-OLG, 2021 WL 2669558, at *1 (W.D. Tex. June 16, 2021) (allegations survive pleadings where plaintiff alleges the use of a random or sequential number generator to determine dial sequence); Ma*cDonald v. Brian Gubernikc PLLC*, No. CV- 20-00138-PHX-SMB, 2021 WL 5203107, at *2 (D. Az. Nov. 9, 2021) (same); *Daschbach v. Rocket Mortg., LLC*, No. 22-cv-346-JL, 2023 WL 2599955, at *11 n.34 (D.N.H. Mar. 22, 2023); *McEwen v. Nat'l Rifle Ass'n of Am.*, No. 2:20-cv-00153-LEW, 2021 WL 5999274, at *4 (D. Me. Dec. 20, 2021); *Timms v. USAA Federal Savings Bank*, 543 F.Supp.3d 294, 299–302 (D.S.C. 2021) (evidence that equipment uses a random or sequential number generator to determine the order in which calls are placed may be sufficient to survive a motion for summary judgment); *Bank v. Digital Media Solutions, Inc*. Case No. 22-cv-293, 2023 WL 1766210 (E.D.N.Y. Feb. 3, 2023) (rejecting the concept of a random telephone number generator, and declining to adopt a standard for ATDS which requires telephone number generation); *Salaiz v. Beyond Finance*, 2023 WL 6053742 (W.D. Tex. Sept. 18, 2023) (denying a motion to dismiss based on ATDS allegations and noting that beeps, dead air time, generic messages, and spoofed telephone numbers can give rise to an ATDS inference, which implies that predictive dialers and SMS blasters, like the one Plaintiff was texted by and which do almost universally use random or sequential number generators in their programming code, are an ATDS).

As the Court explained in Facebook, equipment is an ATDS if it uses some form of random or sequential number generation in its code to either store or produce telephone numbers to be called. *Facebook* at 1167. The Supreme Court addressed this in footnote seven, describing technology that uses random number generation to store and produce telephone numbers without randomly generating those telephone numbers themselves. In this case, Plaintiff alleges a random or sequential number generator was used to parse a list of telephone numbers, store them as records in a database, and then produce them from the database and dial those telephone numbers upon the production of a random number. Use of a list does not foreclose random number generation; neither requires use of the other.

Autodialers can use both random and sequential number generators to operate and can be used in conjunction with telephone numbers in their storage and production of data throughout the dialing system, without dialing sequentially or randomly generated telephone numbers. Such number generators are programming tools used by software engineers to automate certain functions that would otherwise have to be manually performed by human hand.

The FCC, the agency charged with promulgating regulations concerning the TCPA, includes on its website "Political Robotexts  Robotexts – text messages generated through autodialing – are also considered a type of call and fall under all robocall rules.  As text messages generally go to mobile phones, robotexts require the called party's prior express consent. However, political text messages can be sent without the intended recipient's prior consent if the message's sender does not use autodialing technology to send such texts and instead manually dials them." https://www.fcc.gov/rules-political-campaign-calls-and-texts. There is no way that in this circumstance, the numbers texted were "manually dial[ed]."

      c. **The Amended Complaint contains sufficient allegations of the use of an artificial or pre-recorded voice.**

In the alternative, Plaintiff alleges that the text messages sent utilized an artificial or pre-recorded voice. Like a traditional artificial voice phone call, Defendants' messages were not organic. An organic text message would involve a live person sending it. Organic text messages are interactive – one can respond to them and receive a natural response back from a person, not a machine. Defendants' messages were drafted in advance and stored in a computer and blasted out to the masses at a later preprogrammed time. They lacked spontaneous quality. Their transmission was incapable of natural alteration, or natural response. The timing of when and how they were to be sent was determined by a computer, not a person. A robot sent the messages. Clearly, it is artificial.

There are several reasons to believe the definition of voice targeted by Congress should be interpreted broadly. The purpose of the TCPA is to protect consumer privacy from intrusive telephone communications. The legislative history numerously emphasizes that the artificial/prerecorded voice prohibitions hinge on the fact that the calls are agentless, i.e., the lack of having a conversation with someone on the other side who can respond to questions or frustration, and instead receiving a static, one-sided message. Congress was being presented with two distinct privacy threats – automated calls sent in high volumes with a computer involving a

live agent (campaign/predictive dialers), and agentless calls where consumers were deprived of the dignity of expressing their frustration because only a computer lay at the other end of the telephone (artificial/prerecorded voice). The goal of the statute is served by interpreting "voice" under a broad definitions offered by the dictionary.

The TCPA is a remedial statute intended to protect consumers from unwanted automated telephone calls and messages, it should be construed in accordance with that purpose. *Van Patten v. Vertical Fitness Grp.*, LLC, 847 F.3d 1037, 1047 (9th Cir. 2017) (citing *Gager v. Dell Fin. Servs.*, LLC, 727 F.3d 265, 270 (3d Cir. 2013)). Because the TCPA is a remedial statute, it "should be construed broadly to effectuate its purposes." *Caplan v. Budget Van Lines, Inc.*, No. 220CV130JCMVCF, 2020 WL 4430966, at *3 (D. Nev. July 31, 2020). Any ambiguities in the statutory text must be construed in the consumers' favor, under well-understood canons of construction. *Reyes v. Lincoln Automotive Financial Services*, 861 F.3d 51, 58 (2d Cir. 2017). A remedial statute "is entitled to a broad interpretation so that its public purposes may be fully effectuated." *Marriott v. National Mut. Cas. Co.*, 195 F.2d 462, 466 (10th Cir. 1952).

Defendants contend that a text sent to a person is obviously not artificial or pre-recorded. This is a fine argument, but it is inconsistent with the definitions of "voice" in dictionaries. When engaging in statutory construction, in order to determine the ordinary meaning of a word, consulting common dictionary definitions is the usual course. *Animal Legal Defense Fund v. United States Department of Agriculture*, 933 F.3d 1088, 1093 (9th Cir. 2019); *Cal. All. of Child & Family Servs. v. Allenby*, 589 F.3d 1017, 1021 (9th Cir. 2009). Any definition of "voice" adopted by this Court must permit for the existence of an artificial voice, elsewise it will excise the concept from the plain language of the statute and the disjunctive test for prerecorded or artificial voices from the regulatory prohibitions.

The dueling dictionary definitions as to the term "voice" are such an ambiguity. Construing the ambiguity in Plaintiff's favor serves the policy underlying the prohibition on artificial communications. This is similar to analysis in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009), where the Ninth Circuit found a "call" under the TCPA includes text messages because such definition "is consistent with the dictionary's definition of call in that it is defined as 'to communicate with or try to get into communication with a person by telephone' " and because it "is also consistent with the purpose of the TCPA—to protect the privacy interests of telephone subscribers."

8

Thus, voice should apply to any telephonic communication covered by the statute pursuant to 47 U.S.C. § 227(b)(1)(A). Clearly, the emphasis of the statute was on prohibiting one-sided conversations. SMS blasts are just that. Plaintiff could only slam the phone down on a robot, just like the consumers that pled with Congress to protect from such indignity when they enacted the TCPA. The dictionary supports this as a possible interpretation, and the legislative history contemplates any agentless communication being an artificial voice. Accordingly, canons of construction strongly support Plaintiff's reading of the statute.

Both *Facebook* and the legislative history of the TCPA are clear that the original focus on prerecorded voice technology prohibition was the fact that such communications involved agentless calls, not on the question of whether a literal voice was used during those agentless calls. *See Hearing Before the Subcommittee on Communications of the Committee on Commerce*, *Science and Transportation, United States Senate One Hundred Second Congress First Session July 24, 1992*, *Testimony of Robert Bulmash and Steve Hamm* at pg 11; 7 FCC Rcd. 8752 (F.C.C. September 17, 1992). The Sixth Circuit has also recognized this distinction: "Congress drew an explicit distinction between 'automated telephone calls that deliver an artificial or prerecorded voice message' on the one hand and 'calls place by 'live' persons' on the other." *Ashland Hosp. Corp. v. Serv. Employees Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737,743 (6th Cir. 2013).

In Merriam Webster's Dictionary "voice" is defined as "an instrument or medium of expression." It defines "artificial" as "humanly contrived…often on a natural model : MAN-MADE" and "lacking in natural or spontaneous quality." The messages sent to Plaintiff by Defendants using their SMS blasting platform employed a text message as an instrument or medium of expression to deliver an automatic message drafted in advance of being sent, i.e., that of an SMS message, to convey a telemarketing communication to Plaintiff. The platform is a man-made humanly contrived program which allows companies to blast out such messages via non-spontaneous methods, i.e., automated methods similar to that of an assembly line in a factory. Such SMS blasting devices are incapable of spontaneity, as they must be programmed by the operator to automatically send messages out, en masse, pursuant to preprogrammed parameters. Dictionary.com similarly has twenty-four (24) definitions of the word "voice" and several of the definitions permit for non-verbal communications.

Merriam Webster's Dictionary, "prerecorded" is defined as "recorded in advance." "Recorded" is defined as "to set down in writing." The text message sent to Plaintiff's cellular

9

telephone via the SMS blasting platform was set down in writing in advance by Defendant, whose employees wrote out the standard automated messages that were to be sent to Plaintiff and by way of preprogrammed SMS blasting, entered the prerecorded message into the SMS Blasting platform, and thereafter sent these messages pursuant to scheduled blasts that were programmed by Defendant. Thus, Defendant employed a text message as an instrument or medium of expression to deliver a prerecorded message drafted in advance of being sent.

Once dictionaries fail to provide a definitive answer to a plain meaning analysis, we must turn to other portions of the statute to determine which readings permit the statute to flow in harmony with itself. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). The definition of an artificial voice axiomatically cannot be man-made, humanly contrived, or use a larynx. Some definitions of voice rely upon sound. Others do not. To assist in further analyzing the issue, the purpose of the statute must be examined. *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1050 (9th Cir. 2018) (overturned on other grounds). *Marks* performed exactly such lengthy analysis of the purpose of the statute from 904 F.3d 1043 to 1044, noting as part of its lengthy discussion that the TCPA was passed to address "[t]he dark side . . . [of] [c]omputerized calls [that] are the scourge of modern civilization . . . [and] not just calls to doctors' offices or police and fire stations that pose a public health hazard."

In sum, the TCPA's technological prohibitions were enacted to 1) reduce the onslaught of automated telemarketing calls made without consent, 2) prohibit companies from automatically delivering thousands of agentless "computerized" messages to consumers' telephones, 3) interrupting and disturbing consumers with unwanted telemarketing messages, 4) specifically prohibiting artificial and prerecorded messages without a live person due to even heightened invasions of privacy for such calls resulting from the inability to interact with a person who is bothering you and further depriving consumers of the dignity of expressing their frustration, 5) preventing the annoyance of a "computer trying to sell something" through telemarketing communications, 6) protecting public health by preventing consumers telephones from being clogged up with unwanted communications during times when they may need their telephones for other more important reasons, and 7) generally protecting consumer telephone privacy rights. This same history was outlined in Facebook, as well as in *Barr v. American Association of Political Consultants, Inc.*, 140 S.Ct. 2335, 2344-2345 (2020).

Computerized agentless automated SMS Blaster text messages are identical in almost every way to the communications which gave rise to the TCPA. An agentless SMS blasted message like the one received by Plaintiff are sent as part of an onslaught of messages sent out in batches without any human involvement, and without consent from the consumer. An agentless SMS blasted message is computerized, and they "interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of [or in the case of cellular telephones, throw them at] the wall."

Thousands of agentless SMS blasted messages can be sent by computers to thousands of telephones all at once. Since agentless SMS blasted text messages have nobody on the other end of the telephone, they likewise deprive consumers of the dignity of expressing their frustration at the unwanted calls through human interaction, and are therefore especially bothersome. Agentless SMS blasted text messages are literally computers trying to sell you something through telemarketing communications. Agentless SMS blasted text messages clog up our cellular telephone screens by popping up on our phones while we are using those telephones for any number of important things like calling a sick family member, attempting to call a medical facility, making urgent work calls, or millions of other examples of tasks much more important than being annoyed by an unwanted telemarketing communication sent by a computer without consent.

Agentless SMS blasted text messages invade our telephone privacy rights. The only difference between a telephone call where a computer conveys an artificial auditory message and an SMS blasted telephone call where a computer conveys the same exact message is that one is audible data, while the other is visual data. That is literally the only factual distinction between the two concepts.

This Court must apply statutory construction principles and define voice in a manner which is in harmony with the remainder of the TCPA and its purpose. As a remedial statute, such a definition should be broad, and should serve the purpose of protecting consumer privacy. Whatever that definition ultimately is, doing so should result in the adoption of a standard which includes agentless computerized SMS blasted text messages, because they are identical in every important way to an agentless computerized auditory telephone message.

### d. Plaintiff should be granted leave to amend

However, if this Court believes that more information is required, the Plaintiff should be permitted to file an amended complaint. *See Ford v. Neese*, 119 F.3d 560, 563 (7th Cir. 1997) (In

the event the court finds that dismissal is warranted, the court should grant the Plaintiffs leave to amend unless amendment would be futile.)

Plaintiff recognizes he has already amended the Complaint once. However, Plaintiff believes that additional facts can now be included in a future amended complaint, which were not available to him prior. On November 15, 2023, Defendants provided Plaintiff their initial disclosures, which identified additional entities and individuals involved in the sending of the text messages. More specifically, the disclosure disclosed that Defendants utilized Prompt.io to send the text messages at issue. Some of the opposition to the Defendants Motion to Dismiss comes from the Prompt.io website terms of service – which Plaintiff recognizes is outside of the pleadings. Plaintiff requests that if the Court were to grant the motion to dismiss, that Plaintiff be allowed to amend his Complaint to include facts such as the terms of service in the next Complaint – which he believes demonstrates he has met his pleading burden – specifically because the terms of service of Prompt.io include references to the use, or capacity, of an ATDS.

### IV. Conclusion

This Court has already found that Plaintiff plausibly stated a claim for relief. Plaintiff has adequately plead that the text messages sent by Defendants violated the TCPA – because the system used was an ATDS, and/or used an artificial or pre-recorded voice. Plaintiff's allegations, at this stage, suffice that required to move on towards discovery, where Plaintiff will have the ability to seek additional specifics about the capabilities of the system – Prompt.io - used by Defendants to send the text messages.

If a text is a call, then the communication conveyed on that "call" must be treated the same as the communication made on an auditory call. And agentless SMS messages sent by computers are clearly artificial. So, a text sent in such a manner is an artificial voice.

To the extent that the Court finds the motion to dismiss should be granted, Plaintiff requests leave to file a Second Amended Complaint – which would include additional allegations discovered as a result of Defendants initial disclosures – identifying Prompt.io.

Defendants motion to dismiss should be denied.

DATED: December 22, 2023

/ / /

>*/s/ Jorge A. Rojas*
>
>Jorge Alejandro Rojas
>557 Cambridge Way
>Bolingbrook, IL 60440
>Rojas.jorge96@gmail.com
>424-219-1582
>Plaintiff in *Pro Se*

**CERTIFICATE OF SERVICE**

A copy of this filing will be served on Defendants via CM/ECF.

>*/s/ Jorge A. Rojas*
>
>Jorge Alejandro Rojas
>557 Cambridge Way
>Bolingbrook, IL 60440
>Rojas.jorge96@gmail.com
>424-219-1582
>Plaintiff in *Pro Se*