IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JORGE ALEJANDRO ROJAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 23 C 5049 |
| | ) | |
| | ) | Judge Nancy Maldonado |
| FIRST PARTY FOR BOLINGBROOK, | ) | Magistrate Judge M. David Weisman |
| MICHAEL J. CARPANZO, and MARY | ) | |
| ALEXANDER-BASTA, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Pursuant to Local Rule 73.1(g), the parties filed a limited consent to this Court's jurisdiction regarding Defendants' pending motion to dismiss the First Amended Complaint ("FAC"); the District Court then transferred the motion to this Court for ruling [36]. For the reasons set forth below, Defendants' motion to dismiss [21] is denied.

A motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of a complaint. To defeat a 12(b)(6) motion, the allegations in a complaint must be plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq., makes it unlawful to make calls to any cellular or residential line using an artificial or prerecorded voice, or an automatic telephone dialing system ("ATDS"), without the call recipient's prior express consent and provides a private cause of action to persons who receive such calls. *Id.* § 227(b), (b)(3). After allegedly receiving 13[1] campaign texts[2] from Defendants advocating on behalf of

---

[1] While Plaintiff sets forth six text messages that he received, he further alleges that, given their length, the messages are deemed to constitute more than one. (FAC, Dkt. # 15, ¶ 47) ("A text messaging segment calculator calculates the above text, because of length, to be in fact two text messages."). Whether Plaintiff received six or more than six texts, the Court's ruling on the instant motion to dismiss would remain the same.

[2] For example, Plaintiff alleges that on February 27, 2023, he received the following text message from (708) 312-3544: "Hello, Jorge, this is Mayor Mary Basta. I wanted to remind you that we

certain candidates, Plaintiff sued for violations of the TCPA. According to the amended complaint, "[u]pon information and belief, the automated text messaging system used by Defendants to send the text messages has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator" and the "[t]he texts were conducted using an [ATDS]." (FAC, Dkt. # 15, ¶¶ 32, 72.). Defendants argue that Plaintiff has failed to allege facts in support of either contention.

Regarding Plaintiff's allegation that the texts were sent using an ATDS, the TCPA defines an autodialer as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). "To qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021). "[E]ven though a plaintiff will rarely, if ever, know the specific functionality of a system used by a defendant before discovery, the plaintiff must still allege sufficient facts to nudge his claim across the line from conceivable to plausible." *Watts v. Emergency Twenty Four, Inc.*, No. 20 C 1820, 2021 WL 2529613, at *4 (N.D. Ill. June 21, 2021) (internal quotations omitted). A complaint should include "anything . . . about the circumstances of the call" that suggests the use of an ATDS. *Garner v. Allstate Ins. Co.*, 20 C 4693, 2021 WL 3857786, at *3 (N.D. Ill. Aug. 30, 2021).

As Plaintiff argues, the amended complaint alleges, among other things, that the texts used the language "Reply STOP to opt out," which supports a finding that Plaintiff has stated a plausible claim under the TCPA. *See Poonja v. Kelly Servs., Inc.*, No. 20 C 4388, 2021 WL 4459526, at *3 (N.D. Ill. Sept. 29, 2021) ("Plaintiff's allegations of a generic message, sent by a 1-833 number, with "STOP" and "text back" functionality suffice to survive a motion to dismiss"). Defendants, however, assert that certain of the messages used Plaintiff's name and were sent from a local phone number, thus undermining a finding that the texts were sent with equipment that has the capacity to store or produce a telephone number using a random or sequential number generator. The Court, however, cannot rule out the existence of autodialers that capture not just a random phone number but also the name of the account holder and use a local phone number as the source.[3] *See Garner*, 2021 WL 3857786, at *4 ("[W]hile Plaintiffs do not explicitly allege that [defendant] used 'spoofed' phone numbers, this Court may infer that at least some of the caller numbers were

---

have an important election coming up on April 4. I am asking you to support Michael Carpanzano, Jean Kelly, and Jose Quintero. They are crucial to the future of Bolingbrook. https://electme.app/5fLk4UUE Reply STOP to opt out." (FAC, Dkt. # 15, ¶ 46.) Plaintiff received similar texts, two without his name, from the same number on March 8, 15, and 20, 2023 and April 2 and 3, 2023.

[3] According to the amended complaint, "[t]he telephone number Defendants used to send the text messages is assigned to Sinch"; "Sinch's website boasts broadly about its ability to interface with other platforms and send texts en-masse"; the "text messages were sent en masse to many individuals and were pre-written and not personalized in nature except for automated scripting which would insert the relevant information needed to be included such as election location"; and "Defendants hired, permitted, and enjoyed the benefits of any lead generator and call center[']s mass robocalling." (FAC, Dkt. # 15, ¶¶ 76-77, 85, 109.)

selected 'to obscure or misrepresent the geographic and actual identity of the caller so as [to] induce the call recipient to answer his phone.'") (citation omitted), or that the sender used a device that *has the capacity* either to store or produce a telephone number using a random or sequential generator. Moreover, while including Plaintiff's name, the purportedly offending messages themselves were generic, which, as noted above, can help to push a TCPA claim into the realm of plausibility. Finally, Plaintiff notes in his response brief that Defendants' initial disclosures indicate they used Prompt.io to send the text messages at issue, and Prompt.io's terms of service include references to the use of, or capacity to use, an ATDS, thus making it Plausible that an ATDS system was used here. *See Geinosky v. City of Chi.*, 675 F.3d 743, 745 (7th Cir. 2012) ("In the district court, too, a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove.").

Although a close call, given the lack of information available to Plaintiff and construing the allegations in Plaintiff's favor, as the Court must at this stage, the Court concludes that Plaintiff has stated a claim under the TCPA.[4] *See Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010) (stating that "in analyzing the sufficiency of pleadings, 'a plaintiff's pleading burden should be commensurate with the amount of information available to them'" and concluding that the plaintiff "pled sufficiently given the amount of information to which she had access") (citation omitted); *Garner*, 2021 WL 3857786, at *4 ("a determination [regarding the type of dialer used] requires information about the technical details of the device that the defendant used to make the calls—information that the plaintiff lacks prior to discovery," so "'a plaintiff need not provide

---

[4] The basic facts of *Facebook* are as follows:

> Petitioner Facebook, Inc., maintains a social media platform with an optional security feature that sends users "login notification" text messages when an attempt is made to access their Facebook account from an unknown device or browser. . . . To opt in to this service, the user must provide and verify a cell phone number to which Facebook can send messages.

*Facebook,* 592 U.S. at 395. After Plaintiff received several of these notifications despite not having signed up for a Facebook account, he sued under the TCPA. Plaintiff "alleged that Facebook violated the TCPA by maintaining a database that stored phone numbers and programming its equipment to send automated text messages to those numbers each time the associated account was accessed by an unrecognized device or web browser." *Id*. at 401. The Supreme Court concluded that "Congress' definition of an autodialer requires that in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator," and "[t]his definition excludes equipment like Facebook's login notification system, which does not use such technology." *Id*. at 404. Specifically, "[b]ecause Facebook's notification system neither stores nor produces numbers 'using a random or sequential number generator,' it is not an autodialer." *Id*. at 402. Unlike in the instant case, in *Facebook*, the type of device that Facebook used to send the message was not disputed; the Supreme Court addressed only whether such a device fell within the TCPA's definition of an autodialer based on the statutory construction. *Id*. (determining whether the statutory language "using a random or sequential number generator" modifies both verbs that precede it ("store" and "produce").

3

specific, technical details'" about the predictive dialer at issue "'at the pleading stage.'") (citation omitted).

Because the Court has concluded that Plaintiff has sufficiently alleged a TCPA claim based on the use of an ATDS, the Court need not address whether the texts used a pre-recorded or artificial voice. To avoid unnecessary expense, the Court recommends that the parties' initial discovery efforts focus solely on whether Defendants used an ATDS in contacting Plaintiff.

For the reasons stated above, Defendants' motion to dismiss the amended complaint [21] is denied.

**Date**: March 25, 2024

**M. David Weisman**
**United States Magistrate Judge**

4